# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, vs. **BOYER THOMAS LAFORGE, JR.,** Defendant. | 3:19-CR-30065-RAL **REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS STATEMENTS** |

Boyer Thomas LaForge, Jr. made warned statements to an FBI agent while in jail on tribal charges and again, two and-a-half months later, during an in-custody transit. He seeks to suppress his statements under *Miranda* and both the Fifth and Sixth Amendments. The Government does not oppose excluding the second set of statements as substantive trial evidence. LaForge's suppression motion should be granted to this extent but not otherwise.

## BACKGROUND

Around 3:00 p.m. on February 4, 2019, FBI Special Agent Benjamin Plante received a telephone call from tribal officers of a reported rape on the Lower Brule Indian Reservation. Agent Plante traveled to the residence where the rape supposedly took place, secured consent to search the home, and collected several items. He then

went to Sanford Chamberlain Hospital and interviewed the alleged victim, Donna White Light.

There, White Light related that LaForge had physically and sexually assaulted her. Agent Plante noted that White Light had injuries on her face and that she was traumatized (emotional) when she described what happened with LaForge. After speaking to White Light for about an hour and-a-half, the agent drove to the Lower Brule Tribal Jail and met with LaForge.

In a conference room at the jail, Agent Plante informed LaForge of his *Miranda* rights from an advice of rights form. LaForge read parts of the consent section of the form out loud and signed it in the agent's presence at 9:43 that night. The two discussed the rape allegations and other matters for just over 50 minutes. The agent recorded the entirety of the conversation.

LaForge did not stumble when he entered or left the room, and did not appear to be intoxicated, drowsy, or under the influence of drugs. Instead, he seemed to understand the questions posed to him and was "thoughtful."[1] But Agent Plante never had jail staff administer a PBT to ascertain LaForge's blood alcohol level. And during the interview, the agent lied and used deception – presumably to get LaForge to admit to raping, or at least assaulting, White Light. LaForge though persisted in denying that he did anything to White Light.

---

[1] Mot. Hrg. Tr. 14-15, 25, 35 (Aug. 26, 2019).

On April 19, 2019, Agent Plante picked up and drove LaForge – who was in custody at the time – from Lower Brule to the Hughes County Jail, a distance of about 60 miles. Before taking off, the agent turned on his recording device and *Mirandized* LaForge. During the transport, LaForge made certain statements in response to questioning.

In its filings with the Court, the Government concedes that LaForge had earlier invoked his rights to remain silent and to counsel and does not resist the suppression of his in-car statements to Agent Plante as substantive evidence. LaForge though maintains that these statements are not admissible at trial for any purpose – including impeachment.

So there are two issues to tackle: (1) were LaForge's February 4 statements made after a knowing, voluntary and intelligent waiver of his *Miranda* rights and (2) were his February 4 and April 19 statements voluntary under the Fifth and Sixth Amendments.

## DISCUSSION

**A. Waiver of *Miranda***

LaForge claims that his *Miranda* waiver was ineffective because he was intoxicated and prevailed upon with "deceitful statements."[2] The Court disagrees.

It is undisputed that Agent Plante advised LaForge of his *Miranda* rights before any questioning took place on February 4 and that LaForge waived these rights in

---

[2]Dkt. No. 39 at 5.

3

writing.[3] The real issue is whether the waiver was binding; or stated another way, whether it was a knowing, voluntary, and intelligent one.[4]

The *Miranda* waiver inquiry has "two distinct dimensions": the waiver must have been (1) "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[5] The totality of the circumstances are to be considered when determining whether a suspect's waiver is valid.[6]

The record irrefutably shows that LaForge waived his *Miranda* rights. He understood his rights and chose not to assert or rely on any of them when he spoke to Agent Plante.[7]

Credible evidence proves that LaForge was mindful of his rights and knew what he was doing.[8] Agent Plante read each of them to LaForge from an advice of rights

---

[3]*See* Mot. Hrg. Tr. 13-14; Mot. Hrg. Ex. 3 (Aug. 26, 2019).

[4]*See Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir.), *cert. denied*, 546 U.S. 1039 (2005).

[5]*Berghuis v. Thompkins*, 560 U.S. 370, 382-83 (2010) (*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

[6]*See Burbine*, 475 U.S. at 421.

[7]*See* Mot. Hrg. Tr. 14, 28; Mot. Hrg. Ex. 2.

[8]*See Berghuis*, 560 U.S. at 385-86; *Burbine*, 475 U.S. at 421.

4

form.[9] LaForge then read out loud the consent portion of the form – albeit not word for word – and signed it.[10]

LaForge's written waiver is a telling manifestation that he understood his rights and was disposed to give them up.[11] His willingness to engage in a 51-minute colloquy without the benefit of counsel and to make statements was a "course of conduct indicating waiver" of his rights.[12] If LaForge wanted to remain silent, confer with or have counsel present, or stop answering questions, he could have said so and ended the interrogation. That he chose not to and elected to participate – by himself – in a sustained dialogue with Agent Plante is confirmation of a full-fledged waiver.[13]

Finally, there is no evidence that LaForge's statements were coerced.[14] He does not contend that Agent Plante threatened, intimidated, or pressured him in any way. Nor does he contend that the agent made any promises or used force, duress, compulsion, or strong-arm tactics. LaForge's age, education, background (including his

---

[9]*See* Mot. Hrg. Tr. 13; Mot. Hrg. Ex. 2 at 1:34-2:20 and Ex. 3.

[10]*See* Mot. Hrg. Ex. 2 at 2:36-50; Mot. Hrg. Tr. 14, 22.

[11]*See North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ("an express written . . . statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver").

[12]*Berghuis*, 560 U.S. at 386.

[13]*See id*.

[14]*See id.* (*citing Burbine*, 475 U.S. at 421); *Colorado v. Connelly*, 479 U.S. 157, 163-67, 170 (1986).

5

familiarity with the criminal justice system)[15] and conduct that day did not intimate that he was low functioning or particularly suggestible and vulnerable to inquiries by an authority figure. His responses to the *Miranda* advisement and statements and actions following it also establish that he was not suffering from any mental afflictions or having any difficulty grasping questions put to him and that he comprehended his predicament. What's more, he volunteered, and freely shared, information with the agent.

LaForge argues that he was under the influence of alcohol when he waived his *Miranda* rights and that as such, his waiver was not made with a "full awareness."[16] "Alcohol use is a factor in determining whether a *Miranda* waiver was valid."[17] Intoxication, however, does not automatically nullify a confession.[18] The test is whether

---

[15] *See* Dkt. Nos. 10, 26 at 3; *see also* Mot. Hrg. Ex. 2 (wherein LaForge talks about his prior criminal escapades).

[16] *See Burbine*, 475 U.S. at 421.

[17] *United States v. Allman*, CR 12-30056-RAL, 2012 WL 3190780 at *5 (D.S.D. Aug. 3, 2012).

[18] *See United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir.), *cert. denied*, 555 U.S. 1019 (2008); *United States v. Brown*, 535 F.2d 424, 427 (8th Cir. 1976).

a suspect's alcohol consumption "caused [his] will to be overborne."[19] It is enough that the suspect was awake and coherent at the time of the *Miranda* waiver.[20]

Any residual alcohol LaForge may have had in his system when he consented to questioning and made statements, did not cause his will to be overborne or undermine his ability to make unconstrained choices. He did not act confused or disoriented before or after his waiver. He appeared to understand his rights and facilely spoke with Agent Plante. LaForge exhibited no indicia of intoxication (slurred speech, gait problems, or incoherence) and had no detectable odor or alcohol about him.[21] And he was scrupulous enough to deny any wrongdoing and make White Light out to be the guilty party or one at fault.[22] In the final assay, LaForge was conscious of the dilemma before him and his alcohol intake did not affect, much less negate, the efficacy of his waiver.[23]

---

[19]*Gaddy*, 532 F.3d at 788 (*quoting United States v. Casal*, 915 F.2d 1225, 1229 (8th Cir. 1990), *cert. denied*, 499 U.S. 941 (1991)).

[20]*Id*.

[21]*See* Mot. Hrg. Tr. 12.

[22]*See* Mot. Hrg. Ex. 2 at 14, 18-19, 29, 39, 47, 49.

[23]*See United States v. Daniels*, 775 F.3d 1001, 1005 (8th Cir. 2014), *cert. denied*, 136 S.Ct. 191 (2015); *United States v. Havlik*, 710 F.3d 818, 822-23 (8th Cir. 2013); *Gaddy*, 532 F.3d at 788; *United States v. Bordeaux*, 980 F.2d 534, 538 (8th Cir. 1992); *Casal*, 915 F.2d at 1229; *Brown*, 535 F.2d at 427; *see also Allman*, 2012 WL 319780 at *5 (the defendant had "full awareness" of his *Miranda* rights and the consequences of his decision to abandon his rights, despite his level of alcohol and intoxication).

LaForge also argues that Agent Plante's lies and deception usurped his will and impaired his ability to resist self-incrimination. These artifices and improprieties, LaForge says, vitiated his *Miranda* waiver. Any such lies and deception though did not occur until some time well after the waiver and did not concern LaForge's rights or the consequences of waiving them.[24] LaForge has failed to explain how the mendacity influenced his decision to waive his rights or kept him from asserting them later on in the interview.[25] Whatever limited relevance Agent Plante's chicanery may have had on LaForge's waiver decision, it did not corrupt, or annul, that decision.[26]

Regardless, agents routinely employ a variety of tactics to elicit confessions from a suspect, including not believing the suspect's explanations, making false promises, playing on the suspect's emotions, using the suspect's respect for his family against him, deceiving the suspect and conveying sympathy.[27] None of these tactics, however,

---

[24]*See* Mot. Hrg. Ex. 2.

[25]*See United States v. Brave Hawk*, 3:15-CR-30090-RAL, 2016 WL 311263 at *3 (Jan. 26, 2016).

[26]*See id*.

[27]*See United States v. Sanchez*, 614 F.3d 876, 884 (8th Cir. 2010); *United States v. Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005); *United States v. Astello*, 241 F.3d 965, 967-68 (8th Cir.), *cert. denied*, 533 U.S. 962 (2001); *Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir.), *cert. denied*, 510 U.S. 822 (1993).

render a confession involuntary unless "the overall impact of the interrogation caused [the suspect's] will to be overborne."[28]

That certainly did not happen to LaForge. Agent Plante's techniques had little or no intrinsic effect on LaForge. Notably, LaForge:

1. Denied engaging in anything but consensual sex with White Light and ever hitting her;[29]

2. Accused White Light of lying, cheating on him, using drugs and stealing his money;[30]

3. Maintained he did not know how White Light sustained her injuries and suggested that someone outside the home was responsible for them;[31] and

4. Recognized that Agent Plante was trying to get him to confess.[32]

Statements like these are more indicative of a knowledgeable suspect (LaForge) trying to cast aspersions on the alleged victim (White Light) and to make her the culprit

---

[28]*United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011); *United States v. Martin*, 369 F.3d 1046, 1055 (8th Cir.), *cert. denied*, 543 U.S. 1035 (2004); *United States v. LeBrun*, 363 F.3d 715, 725-26 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005); *see also United States v. Aldridge*, 664 F.3d 705, 713 (8th Cir. 2011) (police-dominated atmosphere and use of deceptive interview tactics not enough to show that defendant's statement was involuntary).

[29]*See* Mot. Hrg. Ex. 2 at 14:21-25, 18:46-19:02, 29:45-49, 39:54-59, 47:55-57.

[30]*See id.* at 16:24-43, 26:06-28:07, 50:59-51:01; Mot. Hrg. Tr. 28-29, 33-34.

[31]*See* Mot. Hrg. Ex. 2 at 32:50-35:06, 50:10-14; Mot. Hrg. Tr. 30, 33, 36.

[32]*See* Mot. Hrg. Ex. 2 at 49:30-35; Mot. Hrg. Tr. 30.

than of someone being misled, duped, shoehorned, or taken advantage of by the compulsion of a determined interrogator.

This is not one of those isolated cases in which the suspect, after being properly advised of his *Miranda* rights, failed to make an open and autonomous decision to speak with a probing FBI agent. LaForge did not say or do anything that conveyed an inability, on his part, to discern and appreciate his rights and the implications of what he was doing. He was cognizant of the situation he was in and more than willing to answer questions. Courts in this circuit have upheld the validity of waivers made under circumstances much more extreme than those here.[33] In any event, "[e]ven if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect. . . a *Miranda* waiver will not be invalidated on that basis [unless there is] evidence of police coercion."[34] No such evidence exists here.

**B. Voluntariness**

Ever vigilant, LaForge likewise claims that the statements he made during the February 4 interview at jail were involuntary. "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities had adhered to the dictates of *Miranda* are

---

[33]*See Brave Hawk*, 2016 WL 311263 at *3 (*citing* cases).

[34]*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir.), *cert. denied*, 565 U.S. 866 (2011); *United States v. Makes Room For Them*, 49 F.3d 410, 415 (8th Cir. 1995).

10

rare."[35] LaForge nevertheless contends that Agent Plante's dishonesty and misrepresentations, when combined with LaForge's intoxication, rendered the jail statements involuntary. The same analysis concerning the voluntariness of a suspect's statements under the Fifth Amendment applies to determine whether the suspect's *Miranda* waiver was voluntary.[36]

As already explained, the atmosphere of the interview was relaxed and conversational. Agent Plante never threatened LaForge or made any promises and LaForge was alert and engaged throughout the discourse.[37] Any alcohol impairment, fabrications, or deception LaForge may have endured did not transform the interview into a coercive encounter that overbore his will.[38] The alcohol LaForge drank (more than six hours and forty minutes earlier)[39] and Agent Plante's prevarications had little or no effect on LaForge.[40] LaForge continued to maintain his innocence and redirected blame for White Light's travails.

---

[35]*Vinton*, 631 F.3d at 483-84 (alteration in original) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 433 n. 20 (1984)).

[36]*See Havlik*, 710 F.3d at 822; *Makes Room For Them*, 49 F.3d at 415; *Brave Hawk*, 2016 WL 311263 at *4.

[37]*See* Mot. Hrg. Tr. 14-15; Mot. Hrg. Ex. 2.

[38]*See Brave Hawk*, 2016 WL 311263 at *4; *United States v. Stoneman*, CR 09-30101-RAL, 2010 WL 1610065 at *4 (D.S.D. April 20, 2010).

[39]*See* Mot. Hrg. Tr. 10, 26, 45, 52; Mot. Hrg. Ex. 3.

[40]*See Daniels*, 775 F.3d at 1005.

The audio recording and Agent Plante's testimony (which the Court found to be credible) show LaForge's statements were voluntary. They were ones LaForge wanted to make and were not the offspring of any coercive environment and questioning that overwhelmed his faculties and paralyzed his ability to fend off the urge to confess. This being the case, the statements may be used against LaForge as substantive evidence at trial.

## C. Impeachment

The Government having consented to the suppression of LaForge's April 19 statements in its case-in-chief, there is left to be decided whether these statements can be utilized for impeachment purposes.

Although statements taken in violation of the Fifth and Sixth Amendments cannot be used as substantive evidence, such statements may still be admissible to impeach the conflicting testimony of a defendant.[41] The prosecution cannot convict a defendant based on evidence acquired in disregard of constitutional guarantees and their respective judicially created protections. But the use of statements so gained to impeach prior inconsistent testimony is a different story. If the defendant chooses to testify on his own behalf, then he assumes a reciprocal "obligation to speak truthfully

---

[41]*See Kansas v. Ventris*, 556 U.S. 586, 593-94 (2009); *Oregon v. Hass*, 420 U.S. 714, 722-23 (1975); *Harris v. New York*, 401 U.S. 222, 224-26 (1971).

12

and accurately"[42] and may not "turn the illegal method by which evidence in the Government's possession was obtained to his own advantage and provide himself with a shield against contradiction of his untruths."[43] It is only when the defendant's statements are involuntary that they must be excluded for all purposes.[44] If they are "the product of a rational intellect and free will"[45] then they are admissible.

The rationale behind requiring that illegally obtained statements be voluntary before they are admitted is a straightforward one. Involuntary statements are untrustworthy and not good indicators of perjurious testimony. The prosecution's interest in using them to discredit is therefore reduced. And police conduct that makes a suspect's statements involuntary cuts more deeply into constitutional values than

---

[42]*Harris*, 401 U.S. at 225.

[43]*Id*. at 224 (*quoting Walder v. United States*, 347 U.S. 62, 65 (1954)); *see also Ventris*, 556 U.S. at 593 ("Once the defendant testifies in a way that contradicts prior statements, denying the prosecution use of 'the traditional truth-testing devices of the adversary process,' is a high price to pay for the vindication of the right to counsel at the prior stage."); *Oregon v. Elstad*, 470 U.S. 298, 307, 309 (1985) ("despite the fact that patently *voluntary* statements were taken in violation of *Miranda* must be excluded from the prosecution's case, the presumption of coercion does not bar their use for impeachment purposes on cross-examination . . . . If errors are made by law enforcement officers in administering the prophylactic *Miranda* procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself."); *Hass*, 420 U.S. at 723 (applying the same rationale where the suspect was advised of his rights and then asked for counsel but was questioned without his request being honored).

[44]*See New Jersey v. Portash*, 440 U.S. 450, 459 (1979); *Mincey v. Arizona*, 437 U.S. 385, 389 (1978).

[45]*Mincey*, 437 U.S. at 398 (*citations omitted*).

conduct that merely infringes the *Miranda* prophylactic rules. When statements are extracted involuntarily, the need for deterrence increases and outweighs the need to use them for even the limited purpose of impeachment.[46]

Based on the recording made of the conversations in Agent Plante's vehicle and the evidence adduced, the Court is satisfied that LaForge's statements were not "extracted by threats, violence or express or implied promises sufficient to overbear [his] will and [to] critically impair his capacity for self-determination."[47] That the statements were made while LaForge was in custody is but one factor among many that must be weighed and carefully evaluated within all aspects of the interrogation.[48] The record as a whole demonstrates that LaForge's statements were voluntary and not the emanation of coercive interrogation or overreaching on the part of the agent.[49]

---

[46]*See* 1 *McCormick on Evidence*, §162 (7th ed. 2013 & June 2016 update).

[47]*LeBrun*, 363 F.3d at 724 (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir.), *cert. denied*, 534 U.S. 924 (2001)); *see also Hass*, 420 U.S. at 722-23 (holding that the suspect's statements, made after he continued interrogation following his request for an attorney, were involuntary for impeachment purposes where "the pressure on him was no greater than that on any person in like custody or under inquiry by any investigating officer"); *see generally* 2 *Criminal Procedure*, §6.2(c).

[48]*See generally* 2 *Criminal Procedure*, §6.2(c).

[49]*See Hass*, 420 U.S. at 722-23; *see also Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'").

Before leaving Lower Brule, Agent Plante read the advice of rights form. LaForge indicated he understood his rights, pointing out that it was "not my first time."[50]

The confab lasted more than hour and was not hostile or combative.[51] Agent Plante did not use trickery or intimidation on LaForge, vow to do anything for him, or talk in a loud or aggressive manner. Nor did the agent mistreat or lay any hands on LaForge. And LaForge was not under the influence of alcohol or drugs and nothing he said or did suggested that he had any sort of mental disability or cognitive impairment.

LaForge appeared willing to discuss what took place the morning of February 4.[52] He readily answered questions (1) he acted in self-defense and only "jabbed" White Light when she came at him; (2) White Light was a regular drug user who was "mean"; (3) she had lied, set him up, and taken his money; and (4) he was innocent of the child abuse charge.[53]

At any rate, Agent Plante's dealings with LaForge that day did not resemble or even approach the gross abuses that have led the Supreme Court in other cases to

---

[50] Mot. Hrg. Ex. 1 at 00:25-01:10; Mot. Hrg. Tr. 17.

[51] *See* Mot. Hrg. Ex. 1.

[52] *See id*.

[53] *See id*.

15

suppress statements on voluntariness grounds.[54] What defines these cases and places them in the involuntariness category, is the interrogating officers' use of coercion to obtain statements from the suspects.[55]

LaForge was not impermissibly coerced. His statements were ones he wanted to make and were not the outcome of an environment and questioning that was so menacing it subdued his will and thwarted his decision-making capacity. The statements thus may be used at trial should he elect to testify in his own defense.[56]

**CONCLUSION**

LaForge knowingly, voluntarily and intelligently waived his *Miranda* rights on February 4. Neither his prior alcohol consumption nor Agent Plante's lies and deception served to override his waiver or the voluntariness of these statements.

All of LaForge's April 19 statements should, as the Government acknowledges, be excluded at trial as substantive evidence. But the Government may use the

---

[54]*See e.g. Arizona v. Fulminonte*, 499 U.S. 279, 286-88 (1991); *Connelly*, 479 U.S. at 163, n. 1.

[55]*See Connelly*, 479 U.S. at 163-67.

[56]*See Ventris*, 556 U.S. at 594 (citing cases); *see also Hass*, 420 U.S. at 723 (allowing as impeachment statements suspect made after invoking his right to counsel and being questioned contrary to that right); *United States v. Blaylock*, 421 F.3d 758, 770-771 (8th Cir. 2005) (defendant's interview statements, obtained in violation of his Sixth Amendment right to counsel, admissible as impeachment evidence at trial), *cert. denied*, 546 U.S. 1126 (2006).

statements to impeach LaForge's own conflicting testimony in the event he takes the witness stand and testifies.

## RECOMMENDATION

Accordingly, based on the authorities and legal analysis set forth herein, and the record now before the Court, it is hereby

RECOMMENDED that LaForge's Motion to Suppress Statements[57] be granted in part and denied in part. The motion should be granted to the extent that it seeks to forbid the Government from making any reference to his April 19 statements in its case-in-chief at trial. In all other respects, the motion (insofar as it seeks to bar all use of his February 4 statements and the use of his April 19 statements for impeachment purposes) should be denied.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[58] Unless an extension of time for cause is later obtained,[59] failure to file timely objections will result in the waiver of the

---

[57] *See* Dkt. No. 38.

[58] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[59] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

right to appeal questions of fact.[60] Objections must "identify[] those issues on which further review is desired[.]"[61]

DATED this 5th day of September, 2019, at Pierre, South Dakota.

BY THE COURT:

*[signature: Mark A. Moreno]*

**MARK A. MORENO**
**UNITED STATES MAGISTRATE JUDGE**

---

[60]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[61]*Arn*, 474 U.S. at 155.